## CARL THOMAS v. STATE.

No. A-10596. Sept. 11, 1946.

(172 P. 2d 651.)

Guy L. Andrews, of McAlester, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., J. Walker Field, Asst. Atty. Gen., and Tom G. Haile, Co. Atty., of Mc-Alester, for defendant in error.

BAREFOOT, J. Defendant, Carl Thomas, was charged in the county court of Pittsburg county with the unlawful possession of intoxicating liquor, to wit: 6 pints of bonded, tax-paid whisky. He waived a jury and was tried, convicted and sentenced to pay a fine of $75 and to serve 30 days in the county jail.

Defendant's rooming house was searched by officers on the 4th day of November, 1943, and six pints of tax-paid whisky were found stored therein. At the time of

search defendant admitted possession of the liquor. At the trial of the case, after the above facts were proven, defendant declined to testify or to introduce any evidence. He was found guilty by the court and punishment assessed as above stated. From this judgment and sentence he has appealed.

As stated in defendant's brief, his contention for a reversal of this case is:

"So, the question before us is whether under the law of the State of Oklahoma as it existed in November, 1943, it was prima facie evidence of any intention to violate the law when a man has within his home three-fourths (¾) of a gallon of liquor."

It is contended that the Oklahoma Statutes of 1941, certified on December 31, 1941, and in accordance with the provisions of an act of the Legislature, Laws 1941, p. 457, 75 O.S.1941 § 101 et seq., enacted and put into force as the law of this state, an old statute known as the "gallon statute," which this court had prior thereto held unconstitutional and to have been repealed. The statute referred to was enacted in 1910-11, and appears as § 6985, C.O.S.1921, §§ 2625 and 2627, O.S.1931, and Tit. 37 O.S. 1941 §§31 and 32, and was as follows:

"It shall be unlawful for any person to have or keep in excess of one quart of spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor; * * * upon, in, or about his place of business, or any place of amusement, or recreation, or any public resort, or any club room, whether such liquor be intended for the personal use of the person so having and keeping the same or not; * * * Provided, further, that this section shall not be construed, in any way, to legalize the keeping of such liquors for an unlawful purpose. A violation of any provision of this section shall be a mis-

demeanor and shall be punished by a fine of not less than fifty dollars ($50.00) nor more than five hundred ($500.00) dollars and by imprisonment for not less than thirty (30) days nor more than six (6) months.

"It is hereby enacted, in order to suppress the unlawful practice of selling, bartering, giving away and otherwise furnishing liquors, the sale of which is prohibited by this act, from private residences, that it shall be unlawful for any person within this state to have or keep at, in, or about his place of residence, at any one time, more than one (1) gallon of spirituous, or one (1) gallon of vinous * * * liquors, or any imitation thereof, or substitute therefor; nor more than one cask of malt liquors, or any imitation thereof, or substitute therefor, nor more than one cask of any liquors or compounds of any kind or description whatsoever, whether medicated or not, which contain as much as one-half of one per-centum of alcohol measured by volume, and which is capable of being used as a beverage, * * *. A violation of any provision of this section shall be a misdemeanor and shall be punished by a fine of not less than fifty dollars ($50.00), nor more than five hundred dollars ($500.00), and imprisonment of not less than thirty days nor more than than six months."

The above statute was amended by the Legislature in 1933, chap. 153, sec. 3, Tit. 37 O.S. 1941 § 82, and is as follows:

"The keeping, in excess of one quart of any spirituous, vinous, fermented or malt liquors, or any imitation thereof, or substitute therefor, or any liquor or compounds of any kind or description whatsoever, whether medicated or not, which contains more than three and two-tenths (3.2%) per cent of alcohol, measured by weight and which is capable of being used as a beverage, * * * or in any manner permitting any other person to have or keep any such liquors in or about his place of business or his residence, or any place of amusement, or recreation, or any public resort, or any club room; * * *

or the keeping in excess of one quart of spirituous, or one quart of vinous, or more than one quart of any liquor or compounds of any kind or description whatsoever, whether medicated or not, which contain more than three and two-tenths (3.2%) per cent of alcohol, measured by weight, and which is capable of being used as a beverage, * * * shall be prima facie evidence of an intention to convey, sell or otherwise dispose of such liquors; provided, further, that this section shall not be construed in any way to legalize the keeping of any liquors for unlawful purposes irrespective of the amount."

This statute was enacted after the same had been submitted to the voters of this state by the Legislature, when it was adopted by the people at an election held on July 11, 1933. Smith v. State, 62 Okla. Cr. 33, 69 P. 2d 671.

The history of the "gallon" and "quart" statutes, with a review of the decisions of this court, is fully given in the case of Morse v. State, 63 Okla. Cr. 445, 77 P. 2d 757. It is unnecessary to here quote fully from that case. It may be noted that the court cites and quotes from the case of Ex parte Wilson, 6 Okla. Cr. 451, 119 P. 596, which held unconstitutional a "quart" law which prohibited the keeping in excess of one quart of intoxicating liquor in one's possession at his place of business, regardless of the fact that it was not for an unlawful purpose. It was there stated [63 Okla. Cr. 445, 77 P. 2d 763]:

"The constitutionality of section 5 was not passed upon by the court in this case, but the two sections of the statute being analogous it is clear that the court would have held section 5 unconstitutional for the same reason that section 4 was held unconstitutional."

Section 5 prohibited the possession of in excess of one gallon of intoxicating liquor at one's residence, and

made the possession thereof an offense regardless of the purpose of possession or intent to sell, convey or give away.

It will be noted that Tit. 37, O. S. 1941 §§ 31 and 32, above quoted, provides that the possession in excess of one "gallon" of intoxicating liquor makes one guilty of illegal possession regardless of the intent with which it may be had. There is no provision in this statute as to the possession of one gallon being "prima facie" evidence of guilt, as appears in the "quart" statute above quoted. Tit. 37 O. S. 1941 § 82.

The contention that the "gallon" law was re-enacted and is the law at the present time is based upon a provision of an act of the Eighteenth Legislature, Laws 1941, p. 457, and Oklahoma Statutes 1941, page 116, which provides: .

"Whereas, the manuscript of Oklahoma Statutes 1941 was presented to the Justices of the Supreme Court of Oklahoma for their examination and approval as to form and as to compliance with the requirements of said Act, * * *

"Now, Therefore, the Justices of the Supreme Court of Oklahoma, as required by said Act, do hereby certify that Oklahoma Statutes 1941, as contained in this Volume, is an accurate, complete and correct compilation and codification of the general and permanent laws of the State of Oklahoma."

This certificate of the Supreme Court is based upon sections 7 and 8 of House Bill 519 of the 1941 Legislature, 75 O. S. 1941 §§ 107, 108, which is as follows:

"Section 7. Before finally printing said Statutes, the West Publishing Company shall present their manuscript of said Statutes to the Justices of the Supreme Court of the State of Oklahoma, and shall secure the ap-

proval of the Justices of the Supreme Court as to form and as to compliance with the provisions of this Act; provided, further, that the Justices of the Supreme Court shall also, after approving said manuscript, certify said Statutes as to accuracy, completeness and correctness.

"Section 8. The Oklahoma Statutes, 1941, prepared by West Publishing Company, and in one (1) volume as above provided for, after the same shall have been approved by the Justices of the Supreme Court of the State of Oklahoma as hereinabove provided, shall, as provided in Section 9 be, and are hereby, adopted as the general and public laws of the State of Oklahoma, and the official Statutes of the State of Oklahoma, as to all laws therein contained."

In addition to the above sections of the Act of 1941, it might be well to call attention to the fact that the 1941 statutes were adopted as the "Code and Revised Statutes of the State of Oklahoma," by Chapter 4, Title 80, page 253, Oklahoma Session Laws 1943, effective April 12, 1943.

But it must be remembered that the codifiers of said statute were instructed by section 2 of the authorizing statute, to wit: Chapter 4, Title 75, page 457, Oklahoma Session Laws 1941, 75 O.S. 1941 § 102, to *not include* in their compilation *"laws * * * held unconstitutional by the highest courts."*

Section 2 is as follows:

"Said Statutes shall contain the Magna Carta, Declaration of Independence, the Constitution of the United States with its amendments, the Organic Act of Oklahoma, the Enabling Act of Oklahoma, the Constitution of the State of Oklahoma with its Schedule and amendments, and all laws of the State of Oklahoma of a general and permanent nature *now in force,* including all laws and amendments of a general and permanent nature

passed by the Regular Session of the Eighteenth Legislature, 1941, *with all repealed laws and those* held unconstitutional by the highest *courts eliminated.*"

The "gallon" statute referred to above had been held unconstitutional by this court prior to the codification of the 1941 statutes. Wilson v. State, supra, and Morse v. State, supra. There was no reason for the codifiers to include this section in the statutes of 1941, as it could not be effective if placed therein. It was probably placed there inadvertently. The section had been clearly superseded by the Act of 1933, chap. 153, § 3, Tit. 37 O.S. 1941 § 82, which had been voted on and approved by the voters of this state on July 11, 1933.

Corpus Juris, Vol. 59, § 490, p. 893, gives the rule as follows:

"Where a commissioner authorized to codify existing laws under an appointment which expressly withheld from him authority to include any statute declared invalid by the supreme court, inadvertently included a statute so declared invalid, adoption by the code prepared by the commissioner does not have the effect of validating the statute inadvertently included." Citing State v. American Bank, 75 Mont. 369, 243 P. 1093.

We have examined the case of Atlas Life Ins. Co. v. Rose, 196 Okla. 592, 166 P. 2d 1011, decided by the Supreme Court of this state on February 19, 1946, and think there is a distinction to be drawn between that case and this one, inasmuch as the statute there referred to had been declared unconstitutional by reason of a defective title only, and not the law itself.

Defendant in the instant case was charged with a violation of Tit. 37 O. S. 1941 § 82, known as the "quart" law. The evidence revealed that he had in his possession in excess of one quart of intoxicating liquor. No evi-

.dence was introduced by defendant. This was prima facie evidence that the possession of the intoxicating liquor was for the purpose of sale, barter or giving away, and was for an unlawful purpose. Clasby v. State, 78 Okla. Cr. 45, 143 P. 2d 430; Sparks v. State, 77 Okla. Cr. 428, 142 P. 2d 377; Rainey v. State, 71 Okla. Cr. 1, 107 P. 2d 371; Pierce v. State, 64 Okla. Cr. 251, 78 P. 2d 1073; Dean v. State, 63 Okla. Cr. 385, 75 P. 2d 900; Smith v. State, 62 Okla. Cr. 33, 69 P. 2d 671.

For the reasons above stated, the judgment and sentence of the county court of Pittsburg county is affirmed.

JONES, P. J., concurs. DOYLE, J., not participating.