## Ex parte ALVIN NEIGHBORS.

No. A-10904.   Nov. 19, 1947.

(187 P. 2d 276.)

See, also, 83 Okla. Cr. 331, 177 P. 2d 133.

W. O. Moffett, of Tulsa, for petitioner.

Mac Q. Williamson, Atty. Gen., and Owen J. Watts, Asst. Atty. Gen., for respondent.

BRETT, J.   This is an original action in habeas corpus brought by petitioner, Alvin Neighbors, alleging that he is unlawfully restrained and imprisoned by Claude Moore, warden of the Granite Reformatory, located at Granite, Okla. The cause of said restraint he alleges is based on a judgment and sentence and commitment of 20 years in the State Penitentiary at McAlester, Okla., entered against the petitioner in Tulsa county, Okla., on August 15, 1944, on the charge of first degree manslaughter. His complaint, however, is based upon the proposition that on December 23, 1946, the State Board of Public Affairs made an order transferring the petitioner from

the State Penitentiary at McAlester, to the State Reformatory at Granite. The petitioner contends that said order is void and his restraint and confinement at Granite is without authority of law, for the reason that, under the judgment and sentence of the trial court, he was specifically sentenced to the penitentiary at McAlester and said order of transfer is in conflict with the judgment and sentence of the trial court. He further contends that the provisions of Title 57 O. S. A. § 132 are unconstitutional and in conflict with the provisions of Title 57 O. S. A. § 105.

The judgment and sentence, omitting the caption, is in words and figures as follows, to wit:

"The court does now hereby adjudge and sentence the said: Alvin Neighbors to be imprisoned in the state Penitentiary at McAlester, Oklahoma, at hard labor for the period of Twenty (20) Years for the offense. It is therefore hereby considered, ordered and adjudged by the Court that the said Alvin Neighbors who upon his oath in open court states his age to be 32 years be imprisoned in the state Penitentiary at McAlester in the State of Oklahoma and confined in said Penitentiary for a term of Twenty (20) years for said offense of First Degree Manslaughter said term of sentence to begin from the date of his delivery to the warden of said Penitentiary."

It is well that we note that the petitioner had served a sentence in the Federal Penitentiary at Leavenworth, Kan., prior to imposition of the foregoing sentence he is now serving.

The petitioner bases his contention of wrongful imprisonment at the Granite Reformatory upon the provisions of Title 57 O. S. A. § 105, which reads as follows:

"All persons now convicted, or who may hereafter be convicted of a felony in this state, shall be by the trial judge sentenced to serve such term for which he may be

convicted or sentenced at either the State Penitentiary located at McAlester, Oklahoma, or the Oklahoma State Reformatory located at Granite, Oklahoma, in the discretion of the trial judge passing the sentence; provided, that the trial judge shall sentence confirmed criminals or persons who have theretofore been convicted of a felony and served a term in any penitentiary either state or federal, to the State Penitentiary at McAlester, Oklahoma, together with all persons whose term of confinement is for life or a term of ninety-nine years, and those who are convicted for manslaughter in the first degree, or of an assault with intent to kill when the offense was committed in a cruel or inhumane manner, and persons convicted for rape in the first degree; provided, further, that all other persons who are now or may hereafter be convicted of a felony may, in the discretion of the court passing sentence, be sentenced to the Oklahoma State Reformatory at Granite, Oklahoma. And the trial judge may, in determining whether the person convicted should be confined in the State Penitentiary or at the Oklahoma State Reformatory, take testimony for that purpose. However, no such testimony shall be taken until after conviction."

He contends that the determination of the place of confinement under section 105 is a judicial and not an administrative act.

The state contends that the transfer of the petitioner from the penitentiary at McAlester to the Reformatory at Granite is under the authority of Title 57 O. S. A. § 132, reading as follows, to wit:

"The State Board of Public Affairs shall have the management and control of the penal institutions of this State, located at McAlester and Granite, and may prescribe rules and regulations for the conduct and management thereof. * * * Said State Board of Public Affairs may, in its discretion, transfer prisoners from the State Penitentiary at McAlester to the reformatory at Granite,

and may likewise transfer prisoners from the reformatory at Granite to the penitentiary at McAlester, when in its judgment it is necessary so to do; to separate the confirmed and incorrigible criminals from those who do not require the restrictions placed around them that the confirmed criminal requires; * * *."

In determining the power of the Board of Affairs to make such transfers, as herein involved, it is necessary that we also consider the provision of Title 57 O. S. A. § 231, establishing the State Penitentiary, which reads as follows, to wit:

"There is hereby established at the city of McAlester, in the county of Pittsburg, Oklahoma, a State Penitentiary. All persons convicted of any crime whose punishment is by imprisonment in the penitentiary shall be confined in the said State Penitentiary at McAlester, except as otherwise provided by law."

And, likewise, the provisions of Title 57 O. S. A. § 281, establishing the State Reformatory at Granite, which read as follows, to wit:

"There is hereby created, located and established within one mile of the corporate limits of the town of Granite, Greer county, the Oklahoma State Reformatory. All persons between the ages of sixteen and twenty-five years heretofore convicted of any crime whose punishment is by imprisonment shall be confined at either the Oklahoma State Reformatory or the State Penitentiary in the discretion of the State Board of Prison Control*; and all persons between said ages hereafter convicted of crime, whose sentence to imprisonment shall be not to exceed five years, shall be confined at either the Oklahoma State Reformatory or the State Penitentiary, in the discretion of the court sentencing said persons to imprisonment. The Oklahoma State Reformatory shall be

*Board of Prison Control is abolished and its duties are transferred to the State Board of Public Affairs by § 143, this Title.

under the general charge and management of the said board of control."

Construing these statutes together, it is apparent that the penitentiary was established for imprisonment of those whose crime, under the law, is prescribed to be by confinement in the penitentiary. Title 57 O. S. A. § 105 thus makes it clear that the Legislature intended the penitentiary to be the place of confinement of "confirmed criminals or persons who have theretofore been convicted of a felony and served a term in any penitentiary either state or federal," as well as the place of confinement of persons sentenced to "confinement * * * for life," persons "convicted for manslaughter in the first degree," or an "assault with intent to kill * * * in a cruel and inhumane manner," or, "persons convicted for rape in the first degree." All of the foregoing convicted persons must under the law be confined in the penitentiary at McAlester.

All other persons under the provision of this section in the discretion of the trial court may be sentenced to the reformatory. In the exercise of its discretion, the court may conduct a hearing and take testimony as an aid in determining the place of confinement. But, this latter provision is not applicable as to that class of persons expressly designated to be confined in the penitentiary at McAlester, as defined in section 105 and as heretofore discussed.

In considering the provisions of Title 57 O. S. A. § 281, supra, it is clear that the legislative purpose in establishing the reformatory was to provide a place of confinement for persons between the ages of 16 and 25 years, and whose sentence was not in excess of five years. But, whether a person whose sentence does not exceed five years is sent to the reformatory or the penitentiary is a

matter within the sentencing court's discretion. However, all persons between the ages of 16 and 25 years who are sentenced by the court to the reformatory may not be permitted to serve their sentence there, for section 281 provides:

"All persons between the ages of sixteen and twenty-five heretofore convicted of any crime * * * shall be confined at either the Oklahoma State Reformatory or the State Penitentiary in the discretion of the State Board of Public Affairs."

It is apparent that the latter provision was intended to empower the State Board of Public Affairs to effect the legislative intent as to the segregation of confirmed criminals, repeat violators, hardened criminals from first offenders, and persons whose crime fall within the category of penitentiary cases as defined in Title 57 O. S. A. § 105. This provision is expressly applicable where the court inadvertently sentences a penitentiary case to the reformatory or a reformatory case to the penitentiary. It is intended as an adjunct necessary to effect the intent of the Legislature with reference to classification and segregation of criminals.

Finally, we call attention to the section relied upon by the state under which transfers are effected, Title 57 O. S. A. § 132, supra. This section places control of penal institutions in the State Board of Public Affairs. Under the foregoing pertinent quotation from said statute, it is clear that this power of transfer from the reformatory to the penitentiary and vice versa is like the power of transfer under the provisions of Title 57 O. S. A. § 281; only intended as an aid to effect a legislative intent in classification and segregation of confirmed, hardened criminals, and repeat violators, regardless of age, from first offenders and young offenders between the ages of

16 and 25 years. This conclusion is made more apparent by the statutory language:

"When in its judgment it is necessary so to do; to separate the confirmed and incorrigible criminals from those who do not require the restrictions placed around them that the confirmed criminal requires."

Neither courts nor the State Board of Public Affairs, in exercising the discretion granted under the provisions of Title 57 O. S. A. §§ 105, 132, and 281, are permitted to act arbitrarily, maliciously, or capriciously in effecting transfer; both must act within the limitations of their statutory powers. In this connection, the state contends that under the statutes, confinement is an administrative and not a judicial act. They cite in support thereof 15 Am. Jur. 187, § 155, as follows, to wit:

"Convicts are frequently transferred from one place of imprisonment to another, and it has been said that such a transfer is not such a judicial act that it cannot be performed by the Governor under authority of statute. With only little authority to the contrary, the validity of statutes authorizing administrative boards, or a court, on their petition, under certain circumstances, to transfer to the state prison or other penal institution one originally sentenced to a reformatory has been sustained, notwithstanding objections that such statutes constituted a denial of due process, conferred judicial powers on an administrative body, or authorized the infliction of cruel and unusual punishment, etc., the courts having taken the view that the power conferred on the boards was one of administrative control or discipline, as distinguished from a judicial function, and that where statutes conferring the power of transfer on the administrative boards are effective at the time of the sentence, the possibility of transfer is an incident impliedly annexed thereto."

Cited in support of this statement is Rich v. Chamberlain, 104 Mich. 436, 62 N. W. 584, 27 L. R. A. 573, wherein the court said:

"It is contended that the transfer is a judicial act, and can only be performed by an officer clothed with judicial powers; that the determination of the circuit judge as to the prison in which the convict should be confined is a judicial determination; and that the prisoner has a right to remain in such prison for the period of his imprisonment; or, at all events, that he cannot be summarily removed without a hearing. It is said that the law discriminates between the prisons; that certain offenders cannot be sentenced to the state prison; and that the worst criminals cannot be sentenced to the house of correction, which is said to be designed for the less hardened class of criminals. The Legislature has full authority to provide prisons, and to determine where prisoners may be sent; and the courts have no discretion as to the place to which criminals may be sentenced except as the Legislature gives it. Such discretion is lodged with the circuit judges, and they act judicially in its exercise. But this doctrine is a qualified one, or rather the order of the judge is qualified by the law and such rules and regulations of the prisons as may have been lawfully adopted. Every sentence is subject to these, although it does not mention them."

See, also, Uram v. Roach, 47 Wyo. 335, 37 P. 2d 793, 95 A. L. R. 1448 and at page 1455, annotations of cases construing similar provisions to the same effect. With these statements of the law, we agree but we must observe that while the matter of custody and confinement of one convicted of crime is an administrative matter and not a judicial act, the State Board of Public Affairs must act in fulfilling its administrative duties in a manner that accords with the power conferred in the statutes. Moreover, both the courts and the State Board of Public Affairs, in exercising the discretion as to place of confinement of convicts as conferred by the statutes, must do so

with due regard to the limitations placed upon them in the statutes and both should strive to keep the exercise of such discretion within the ambit of the statute.

In a proper case, the court exercising its discretion, may sentence a person either to the State Penitentiary or to the State Reformatory, in conformity with the provisions of Title 57 O. S. A. § 133, may sentence such person to the nearest penitentiary. However, it was not the intent of the Legislature in enacting this provision that the courts give meaning to this section in such manner as to conflict with and negative the plain provisions of sections 105 and 281 in relation to classification and segregation of convicts and their place of confinement. It is clear that sections 132 and 133 must be construed as ancillary to sections 105 and 281, which may be called, "statutes of basic classification".

In light of what has been heretofore said, the petitioner's contention that the provisions of Title 57 O. S. A. §§ 105 and 132 are in conflict, and § 132 is unconstitutional, is without merit. We believe that the foregoing analysis of said statutes demonstrates that they can be harmonized. It is the duty of the court to construe statutes as a whole and where possible, to give meaning to the legislative intent of each of them. That can readily be done in this instance. However, the petitioner's contention that his confinement in the reformatory is contrary to law is meritorious. The fact is, he was convicted of the crime of first degree manslaughter and was properly sentenced by the Honorable S. J. Clendinning, to 20 years in the penitentiary. Thus, he falls within the statutory classification of those persons whom the Legislature defined as subject to be confined in the penitentiary at McAlester. Moreover, the petitioner is not eligible to confinement in the State Reformatory since he is a repeat violator, which

makes him ineligible under the provisions of Title 57 O. S. A. § 105. There is no discretion granted to either the courts or the State Board of Public Affairs as to the place of confinement of convicts, such as the petitioner. The statutes clearly classify him as a subject for confinement in the penitentiary. The State Board of Public Affairs, in transferring the petitioner from the State Penitentiary at McAlester to the State Reformatory at Granite, acted beyond the scope of the discretionary power conferred upon it by the statutes.

Both the courts and the State Board of Public Affairs are bound by the statutes as written by the Legislature. It is not within the power of either to give meaning to them, other than that clearly expressed or necessarily implied. In this opinion, we have endeavored to give meaning to the legislative intent and harmonize the statutes. Of course, in the event latitude is desirable, in the handling of prisoners, recourse may be had to the Legislature to obtain it. It is not ours to confer by strained interpretation.

For the foregoing reasons, the order of transfer, made by the State Board of Public Affairs on December 23, 1946, transferring the petitioner from the penitentiary at McAlester to the reformatory at Granite, is void. The writ must therefore be granted, with directions to the Oklahoma State Board of Public Affairs that the petitioner, Alvin Neighbors, be returned to the Oklahoma State Penitentiary at McAlester; to there complete the service of the sentence which he is now serving, without prejudice to the petitioner's right to credit, upon the sentence under which he is now confined, for the time he spent in the State Reformatory at Granite. It is so ordered.

BAREFOOT, P. J., and JONES, J., concur.