### Ex parte McKINLEY OLDEN.

No. A-11097. Nov. 3, 1948.

(199 P. 2d 228.)

58

Milton Keen, of Clinton, for petitioner.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

JONES, J.   The petitioner, McKinley Olden, complains that he is illegally restrained of his liberty in the Oklahoma State Reformatory at Granite.

In the verified petition, it is alleged:

"That on or about the 25th day of September, 1945, your petitioner was convicted of the offense of Robbery in Cause No. 17258 in the District Court of Oklahoma County, Oklahoma, and was thereupon sentenced to serve a term of seven years in the Oklahoma State Penitentiary at McAlester, Oklahoma; that on or about the 25th day of September, 1945, your petitioner was convicted of the

offense of Attempted Burglary in the First Degree in Cause No. 17245 in the District Court of Oklahoma County, Oklahoma and was thereupon sentenced to serve the term of two years in the Oklahoma State Penitentiary at McAlester, Oklahoma; that on or about the 25th day of September, 1945 your petitioner was convicted of the offense of Attempted Burglary in the First Degree in Cause No. 17257 in the District Court of Oklahoma County, Oklahoma and was thereupon sentenced to serve the term of two years in the Oklahoma State Penitentiary at McAlester, Oklahoma; that on or about the 25th day of September, 1945, your petitioner was convicted of the offense of Grand Larceny in the First Degree in Cause No. 17244 in the District Court of Oklahoma County, Oklahoma and was thereupon sentenced to serve the term of two years in the Oklahoma State Penittentiary at McAlester, Oklahoma; that your petitioner was thereafter transported to and was received by the Oklahoma State Penitentiary at McAlester, Oklahoma on the 3rd day of October, 1945. That several months thereafter, the exact day being unknown to your petitioner, he was convicted of the offense of Escape From the Sub-Prison in Cause No. 2572 in the District Court of Atoka County, Oklahoma and was thereupon sentenced to serve a term of two years in the Oklahoma State Penitentiary at McAlester, Oklahoma. That thereafter and just immediately prior to the 31st day of December, 1946, the State Board of Affairs, made an illegal order transferring your petitioner from the Penitentiary at McAlester to said Reformatory at Granite."

The petitioner contends that under the statutes of Oklahoma and by reason of the judgments and sentences pronounced against him, he being a confirmed criminal, may not be kept at the said Oklahoma State Reformatory, but should be returned to the penitentiary at McAlester.

At the hearing before this court, the facts showed that the petitioner, in addition to having been convict-

ed of the various offenses hereinabove set forth, had served a term of imprisonment in a United States Penitentiary by reason of a conviction for a felony by a General Court Martial of the Navy.

Petitioner cites and relies as his authority, the case of Ex parte Neighbors, 85 Okla. Cr. 183, 187 P. 2d 276. The Attorney General in his brief asks this court to re-consider the opinion rendered in Ex parte Neighbors, supra, and contends the State Board of Public Affairs, as the administrative agency created by law to handle the custody of prisoners convicted of crime, may make such transfer of prisoners as was made in the instant case under the statutes so as to effectively handle the large prison population of the state.

We assumed original jurisdiction because of the public importance of the question involved and for the reason that the Attorney General contended that considerable confusion had arisen over the administration of the affairs of the two penitentiaries since the decision in Ex parte Neighbors, supra.

It is the contention of the Attorney General that section 105, Tit. 57 O.S. 1941, had been repealed prior to the preparation of the revised code in 1941, and that its inclusion in the 1941 code was erroneous and to treat said section as being in effect was contrary to the decision of this court in the case of Thomas v. State, 83 Okla. Cr. 25, 172 P. 2d 651, wherein it was held that a statute that had been held unconstitutional or repealed was not reenacted or validated by its inclusion in the 1941 code.

To properly understand the question presented, it is necessary to make a complete review of the statutes

pertaining to the creation, mȧnagement, and control of our penal institutions.

By House Bill 715, Session Laws 1907, P. 264, the Legislature established a Board of Control, composed of the Governor, the Attorney General and the President of the Board of Agriculture, who should be vested with authority to arrange for the removal and transfer back to the State of Oklahoma of prisoners from this state who were serving terms in the Kansas State Penitentiary at Lansing, Kansas. By sections 1 and 2 of the act the board was vested with authority to arrange for the custody and imprisonment of such prisoners "at such place or places as said board of control may deem to the best interest of the State."

In 1909, the Legislature adopted two bills establishing, respectively, the State Reformatory and the State Penitentiary. House Bill 150 established the reformatory. It was introduced on January 18, 1909, and as finally enacted it appears as Article 2, Chapter 31, Session Laws 1909. Section 1, as later revised by the 1910 Code, now appears as Section 281, Title 57 Oklahoma Statutes 1941. As originally enacted this section read:

"There is hereby created, located and established within one mile of the corporate limits of the town of Granite, Greer county, the Oklahoma State Reformatory. All persons between the ages of sixteen and twenty-five years heretofore convicted of any crime whose punishment is by imprisonment, shall be confined in the Oklahoma State Reformatory; Provided, the persons between said ages heretofore convicted of crime shall be confined at either the Oklahoma State Reformatory or the State Penitentiary in the discretion of the State Board of Prison Control; and that persons between said ages hereafter convicted of crime, whose sentence to imprisonment shall be not to exceed five years, shall be confined at either the Oklahoma State Reformatory or the

State Penitentiary, at the discretion of the court sentencing said persons to imprisonment. The Oklahoma State Reformatory shall be under the general charge and management of the said Board of Control."

It is apparent at once that the section begins with two exactly conflicting provisions. One providing that all persons between the ages of 16 and 25 years theretofore convicted should be confined in the reformatory, while the immediately following proviso authorized said prisoners to be confined at either the reformatory or the penitentiary in the discretion of the board of control. The first provision was stricken by the revisers in 1910 and the matter left in the discretion of the board. With reference to all persons between said ages thereafter convicted and whose sentence be not to exceed five years, the discretion was left with the court sentencing such persons to imprisonment. Such continues to be the language as it appears in the 1941 Code. It will thus be noted that the confinement of the persons described in said section was left to the discretion of either the board of control or the court pronouncing the sentence.

Further evidencing the intent of the Legislature to make the place of confinement discretionary, we find that section 4 of the act provides:

"It shall be the duty of the courts of Oklahoma to sentence all persons who shall be convicted of crime and whose punishment is imprisonment, to the Penitentiary at McAlester or to the Oklahoma State Reformatory at Granite, as herein provided, and in the discretion of the court."

Section 5 of said House Bill 150 provides:

"It shall be the duty of the Board of Control of the State Reformatory when necessary to transfer any prisoners who are now or who may hereafter be under its charge in the State Penitentiary located at McAlester, Okla-

homa, to the Oklahoma State Reformatory at Granite, Oklahoma, or from the Oklahoma State Reformatory at Granite, Oklahoma, to the State Penitentiary at McAlester, Oklahoma."

It thus appears that a final determination as to the place of confinement of prisoners was left to the board of control, no restriction being placed upon the discretion of said board in transferring prisoners from the penitentiary to the reformatory or from the reformatory to the penitentiary. All the authority of the said board of control was later transferred to the State Board of Public Affairs. Tit. 57 O.S. 1941 § 143.

In the same Legislature, House Bill 373 was introduced on February 5, 1909. This bill created the penitentiary at McAlester. It appeared as Article 1, Chapter 31, Session Laws 1909. Section 1 established the penitentiary and provided:

"All persons heretofore or hereafter convicted of any crime whose punishment is by imprisonment in the penitentiary shall be confined in the said State Penitentiary at McAlester, except as otherwise provided by law."

Section 7 of said act provided that all persons theretofore convicted and sentenced to Lansing, Kansas, and not yet removed to Lansing "and all other persons who have heretofore or may be hereafter convicted of any crime whose punishment is by imprisonment in the penitentiary may by order of said Board of Control, be confined in the penitentiary at McAlester, Oklahoma, or such other place in the state as said Board of Control may designate."

The acts creating these two penal institutions were approved the same day. It would appear from a reading of all the provisions that the Legislature intended to leave in the hands of the board of control the final

decision as to the place of confinement of all persons sentenced to a penal institution.

In 1913 the Legislature passed a comprehensive act relating to the control of our penitentiaries which appears as Chapter 217 Session Laws 1913.

In 1915 the Legislature passed an act relating to penal institutions, Chapter 57 Session Laws 1915, which 1915 act was comprehensive and replaced most of the previous acts.

To illustrate that the 1915 act was intended to cover substantially the matter found in the 1913 act, we set forth the two titles to said act:

### 1913 Act

.'An act to define and regulate the penal institutions of the State of Oklahoma; to provide for the transfer of prisoners from the State Penitentiary at McAlester to the Oklahoma State Reformatory; to provide for the transfer of prisoners confined at the Oklahoma State Reformatory to the State Penitentiary; to create a Board of Prison control for said institutions; to create a Board of Pardons; to provide for the appointment of the warden, deputy wardens and such other officers and employees as may be necessary for said institutions; to fix the compensation for the wardens, deputy wardens and other officers and employees for said institutions; repealing sections 1, 2, 3, 4, 5 and 6 of chapter 22, article 1, of the Session Laws of 1907-08; repealing sections 2, 3, 4, 5, 6 and 7, chapter 31, article 1 of the Session Laws of 1909; and declaring an emergency."

### 1915 Act

"An Act conferring upon the State Board of Public Affairs additional powers, duties and authority; to define and regulate the penal institutions of the State of Oklahoma; to provide for the transfer of prisoners from the State Penitentiary at McAlester to the Oklahoma State Reformatory at Granite to provide for the transfer of prisoners confined in the Oklahoma State Reformatory to the State Penitentiary; to create the office of Pardon and Parole Officer and stenographer thereto; and providing for their compensation and duties; to provide for the appointment of the Wardens, Deputy Wardens, and such other officers and employees as may be necessary for said institutions; to fix the compensation for the Wardens, Deputy Wardens, and other officers and employees for said institutions; and abolishing the Board of Prison Control now provided for, and transferring certain of its duties to the State Board of Public Affairs, and declaring an emergency."

Section 6 of the 1913 act used the following language:

"Said Board of Control may, in their discretion, transfer prisoners from the State Penitentiary at McAlester, Oklahoma, to the Oklahoma State Reformatory

at Granite, Oklahoma, and may likewise transfer prisoners from the Oklahoma State Reformatory at Granite, Oklahoma, to the State Penitentiary at McAlester, Oklahoma, when in their judgment it is necessary so to do, to separate the confirmed and incorrigible criminal from those who do not require the restrictions placed around them that the confirmed criminal requires; provided, that the authority to transfer prisoners herein given shall never be used to impair the efficiency of or to destroy either of said penal institutions."

The 1915 act, section 7, makes no reference to said Section 6, but incorporates the subject matter and in al-

Section 7 of the 1913 Act

"All persons now convicted, or who may hereafter be convicted of a felony in this state, shall be by the trial judge sentenced to serve such term for which he may be convicted or sentenced at either the State Penitentiary located at McAlester, Oklahoma, or the Oklahoma State Reformatory located at Granite, Oklahoma, in the discretion of the trial judge passing the sentence; provided, that the trial judge shall sentence confirmed criminals or persons who have theretofore been convicted of a felony and served a term in any penitentiary either state or federal, to the State Penitentiary at McAlester, Oklahoma, together with all persons whose terms of confinement is for life or a term of ninety-nine years, and those who are convicted for manslaughter in the first degree, or of an assault with intent to kill when the offense was committed in a cruel or inhumane manner, and persons convicted for rape in the first degree; provided, further, that all other persons who are now or may hereafter be convicted of a felony may, in the discretion of the court passing sentence, be sentenced to the Oklahoma State Reformatory at Granite, Oklahoma. And the trial judge may, in determining whether the person convicted should be confined in the State Penitentiary or at the Oklahoma State Reformatory, take testimony for that purpose. However, no such testimony shall be taken until after conviction."

Section 8 of the 1915 Act

"All persons now convicted or who may hereafter be convicted of a felony in this state shall be by the trial judge sentenced to serve such term for which he may be convicted or sentenced at either the State Penitentiary, located at McAlester, or at the Oklahoma State Reformatory, located at Granite."

most identical language vests the same authority in the Board of Affairs.

Section 7 of the 1913 act now appears as Section 105, Tit. 57 O.S. 1941, and is the statute which is in controversy in the instant case.

However, in the 1915 act, Section 8 was directed to the same matter as Section 7 of the 1913 act. These two sections are set forth to illustrate the intention of the Legislature when they passed the subsequent act in 1915.

The enactment of Section 8 of the 1915 act, supra, re-enacted a portion of the law as set forth in Section 7, but it omitted the words contained in the 1913 law which has created so much difficulty in the administering of the law and which has caused many developments to arise in the administration of the act which were not foreseen at the time of the rendition of the opinion in Ex parte Neighbors, supra. It appears that the omission of the proviso in Section 7 of the 1913 act when the 1915 act was adopted was deliberate and intentional on the part of the Legislature because such classifications were impractical and under its cases would arise which were almost impossible of classification. The Attorney General has directed our attention to several instances which have arisen where men would plead guilty to various charges and conceal their prior criminal records from the trial court in order to obtain a lesser sentence where sentence was pronounced by the court upon the theory that they were first offenders. When they entered the penitentiary, they stated they had no prior record. Later, after being transferred to the penal institution at Granite, they filed habeas corpus proceedings in the district court of Greer county, contending that they had prior records or were hardened criminals. Some of them presented the

contention raised by the petitioner herein, that while serving in the armed forces, they were subjected to court martial and sentenced to serve a term in a Federal penitentiary.

One of the provisos in Section 7 of the 1913 act, which is now Section 105, Tit. 57 O.S. 1941, supra, prohibits the incarceration at Granite of a person who is convicted of assault with intent to kill when the offense was committed in a cruel or inhumane manner. The question arises then as to whether if a defendant pleads guilty to the charge of assault with intent to kill and is sentenced to the Granite institution or later is transferred from the McAlester penitentiary to the Granite institution, does he have the right to come into the district court, or this court, and raise the issue that the crime to which he pleaded guilty was committed in a cruel or inhumane manner? Would this court then be required to take testimony in an effort to determine such question? In our experience on the bench, we have observed that most of the serious crimes that are being committed are by young men from the ages of 18 to 25. Many of these young men are the most vicious criminals that we have today. Most of the time, the trial court does not have the information upon which to make a classification under Section 105, supra. We believe that cases of this sort had been called to the attention of the Legislature in 1915, and that their action in omitting the troublesome words from the 1915 act which were set forth in the 1913 act, and now appearing as section 105, supra, was deliberate and intentional, and for the purpose of avoiding difficult situations that would arise to hamper officials in the administration of the act.

We find further evidence that the Legislature considered that Section 7 of the 1913 act had been repealed

by Section 8 of the 1915 act when we read Chapter 211 of the 1917 act. The title to that act reads:

"An Act to amend section 8, 9, and 10, of chapter 57 Session Laws of 1915 relating to penitentiaries the sentencing of prisoners after conviction to serve terms therein and relating to the officers of the penitentiary making this act effective July 1st, 1917."

The 1917 act of the Legislature was the last act of the Legislature upon the subject matter herein involved. Section 1 of said act which now appears as Section 133, Tit. 57 O.S. 1941, provides:

"All persons now convicted or who may hereafter be convicted, of a felony in this State shall be by the trial judge sentenced to serve such term for which he shall have been convicted or sentenced to the nearest State Penitentiary, the distance to be computed in accordance with the usual traveled route."

This section seems plain and unambiguous and by its term requires the trial judge to sentence a prisoner to the nearest penitentiary. Probably the Legislature had in mind the expense incurred by counties in the transportation of prisoners to the penal institutions. But, if this section means what it plainly states, it would be unreasonable to read into it exceptions and classifications which would prevent the trial judge from committing the convicted person to the nearest penitentiary.

In the case of In re Application of Jackson et al., 179 Okla. 577, 66 P. 2d 1101, 1103, the Supreme Court of this state said in part:

"The petitioners do not contend that there is any conflict between the 1909 and the 1915 laws, but they contend that the later repeals the former by substitution, in that the 1915 law completely covers the subject of the conservation of natural gas. We think this reasoning is sound. Both acts were intended to prevent waste

of natural gas. The 1909 act referred to waste by escape, requiring it to be shut in and confined until it shall be 'utilized for lights, fuel or power purposes.' The 1915 act refers to waste by (a) escape into the open air, (b) drowning with water of the gas stratum, (c) underground waste, (d) permitting a well to wastefully burn, and (e) wasteful utilization of such gas; and section 3 (52 Okla. St. Ann. § 238) requires that 'such gas shall be confined to its original stratum until such time as the same can be produced and utilized without waste.'

"It is well settled that where two legislative acts are not in express terms repugnant, yet, if the later act covers the whole subject of the first and embraces new provisions plainly showing that it was intended as a substitute for the first act, it will be construed to repeal the first act by implication, although it makes no reference to it. Hine v. Gokey, 1909, 23 Okla. 870, 102 P. 77; Board of Education v. McCracken, 1917, 62 Okla. 173, 162 P. 782; 25 R.C.L. 915; City of Ardmore v. Chicago, R. I. & P. R. Co., 1935, 172 Okla. 373, 45 P. 2d 540. It does not follow, as contended by appellants, that if section 1 of the 1909 act (52 Okla. St. Ann. § 291) was so repealed by the act of the 1915, the remaining sections were also repealed. For the repeal only affects those shown to have been substituted by later and more comprehensive provisions and the remaining provisions can be construed in harmony to effect the intention of the Legislature on the subject of conservation."

In Brockman v. Board of Directors, 188 Ark. 396, 66 S. W. 2d 619, 621, the court said in part:

" 'There are two ways of repealing a statute or part thereof; one is by express terms, the other by necessary implication. The question of repeal is one of intent and must be solved by determining as near as may be the intent of the legislature.

" 'An express repeal is the abrogation or annulment of a previously existing law by the enactment of a subsequent statute which declared that the former law shall be revoked or abrogated.' 59 C.J. § 502.

"The Constitution provides the method for amending a law and requires that whatever part thereof is to be retained 'shall be re-enacted and published at length.' Article 5, § 23. It is invariably held all of the section or law that is omitted and not re-enacted in the provisions of the amendatory act as proposed is repealed. Appelgate's Constitution of Arkansas Annotated, art. 5, § 23, p. 47, and cases cited.

"This court has already held, construing Amendment No. 14 to the Constitution, that the Legislature has the right to repeal a local act entirely or only some particular part of it. Gregory v. Cockrell, 179 Ark. 719, 18 S. W. 2d 362.

"The method adopted here by re-enacting the particular part of the act proposed to be retained effected only the repeal of that part omitted, and was within the competency of the Legislature as correctly held by the chancellor herein."

In Hauserman v. Board of Com'rs of Clay County, 89 Kan. 555, 132 P. 212, 213, the court said in part:

"It seems quite clear that the striking out of the sentence in question either deprived the commissioners of the power to review the award of damages made by the viewers, or it had no practical effect whatever. The question for determination therefore is whether the words explicitly conferring a right of revision upon the commissioners were omitted from the new act because of a change in legislative policy, or because they were regarded as surplusage. Ordinarily there is a presumption that a change in the language of a statute results from a purpose to change its effect, but this presumption may be strong or weak according to circumstances, and may be wanting altogether in a particular case. The

accepted rule and its limitations have been thus stated: 'It will be presumed that the Legislature, in adopting the amendment, intended to make some change in the existing law, and therefore the courts will endeavor to give some effect to the amendment. A change of phraseology from that of the original act will raise the presumption that a change of meaning was also intended. This presumption is fairly strong in the case of an isolated, independent amendment, but is of little force in the case of amendments adopted in a general revision or codification of the laws, as in such case the change of phraseology may be due to the rearrangement of the statutes or to a desire to improve the style' 36 Cyc. 1165, 1166.

"The act of 1903 cannot be regarded as a general revision of the act of 1874. Only seven sections out of 33 were affected. But even in a revision, the dropping out of a material provision is deemed equivalent to its express repeal.

" 'It is a well-settled rule that when any statute is revised, or one act framed from another, some parts being omitted, the parts omitted are not to be revived by construction, but are to be considered as annulled'. Ellis v. Paige, 1 Pick. 43, 45, 18 Mass. 43, 45; Lyon v. Smith, 11 Barb. N.Y. 124, 126; Pingree v. Snell, 42 Me. 53, 55.

"If the new statute were to be considered alone, as an original enactment, without regard to its history, there would be little difficulty in inferring, from the reference to an appeal from the decision of the commissioners, that the Legislature intended them to revise the award of the viewers, but we think such an inference should not prevail here, because a stronger evidence of the purpose of the Legislature is afforded. For years the statute contained a sentence which in clear and express terms granted to the commissioners the power of revision. The striking out of this sentence shows that the attention of the Legislature was particularly drawn to the matter, and has almost the force of a declaration that the power should no longer exist. The part of the statute conferring upon the commissioners the power of revision is expressly re-

pealed. 1 Lewis' Sutherland on Statutory Construction (2d Ed.) pp. 442, 459. Of a similar situation it has been said: 'Where the legislative body, in amending an act, omits certain limitations expressed in the original act in simple language, plain in its meaning, the presumption of law is that the limitation no longer exists, at least in the absence of other express words showing that it was intended to continue. Neither ambiguous nor uncertain language will prevail against such an express omission.' United States v. Prentis, D.C., 182 F. 894, 897."

In Lawyer v. Carpenter, 80 Ark. 411, 97 S.W. 662, paragraphs 2 and 3 of the syllabus read:

"2. Re-enactment of the substance of part of a section of a statute and omission of the remainder evidences an intention to repeal all not re-enacted."

In the body of the opinion the court said in part:

"The established canon of statutory construction on this subject is: 'Where the Legislature takes up a whole subject anew, and covers the entire ground of the subject-matter of a former statute, and evidently intend it as a substitute for it, the prior act will be repealed thereby, although there may be no express words to that effect, and there may be in the old act provisions not embraced in the new.' Pulaski County v. Downer, 10 Ark. 588; Dowell v. Tucker, 46 Ark. 438; Wood v. State, 47 Ark. 488, 1 S.W. 709; Inman v. State, 65 Ark. 508, 47 S.W. 558; Wilson v. Massie, 70 Ark. 25, 65 S.W. 942."

See, also, National Bank of the Republic v. Current et al., 142 Ky. 353, 134 S.W. 479; Gill v. Goldfield Consolidated Mines Co., 43 Nev. 1, 176 P. 784, 184 P. 309; In re Ferdon, 35 Or. 171, 57 P. 376; Edson v. State, 134 Ala. 50, 32 So. 308; State v. Webster Parish School Board,

126 La. 392, 52 So. 553; Grieb v. Jefferson County Fiscal Court, 249 Ky. 659, 61 S.W. 2d 285.

In the case of Roche v. Mayor et al., 40 N.J.L. 257, the court said:

"The rule does not rest strictly upon the ground of repeal by implication, but upon the principle that, when the Legislature makes a revision of a particular statute, and frames a new statute upon the subject-matter, and from the framework of the act it is apparent that the Legislature designed a complete scheme for this matter, it is a legislative declaration that whatever is embraced in the new law shall prevail, and whatever is excluded is discarded. It is decisive evidence of an intention to prescribe the provisions contained in the later act as the only ones on that subject which shall be obligatory. Sacramento v. Bird, 15 Cal. 294; State v. Conkling, 19 Cal. 501."

Our attention has been directed by the Attorney General to the fact that the Attorney General, since the passage of the 1915 and 1917 laws, has construed those acts as having repealed section 7 of the 1913 act, which appears as section 105, supra, of Tit. 57 of the 1941 Statutes. Under this administrative construction of the statutes, the State Board of Public Affairs has been transferring prisoners from the reformatory to the penitentiary and from the penitentiary to the reformatory in their discretion. Such administrative construction has existed for over thirty years. Many sessions of the Legislature have met during this period of time and no attempt was made to pass any legislation limiting the authority of the State Board of Public Affairs under which they were acting pursuant to the opinion of the Attorney General.

In the case of Ex parte White, 75 Okla. Cr. 204, 130 P. 2d 103, it is held:

"The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation."

In the body of the opinion it is stated:

"There is another reason why the contention of counsel for defendant may not be sustained. The statute herein involved became a law in 1910. Session Laws 1910, chap. 69, § 13. The Attorney General has directed the attention of this court to the fact that the administrative construction placed upon said statute by the Attorney General soon after its enactment was in accordance with the definition hereinabove set forth and included an ascertainment of the guilt of the party by a judgment and sentence on the verdict or by a plea of guilty. The court clerks of this state, acting on the advice of the Attorney General, have uniformly followed this administrative construction of said statute.

"This is the first time this issue has been raised in the Criminal Court of Appeals. The Legislature, with a full knowledge of the administrative construction placed on said statute, has allowed it to remain a part of our code without change since its adoption in 1910. For thirty years these fees have been charged as costs without questioning said statute.

"In the case of League v. Town of Taloga, 35 Okla. 277, 129 P. 702, 705, it is stated as follows:

" 'The construction placed on statutes or constitutional provisions by officers in the discharge of their duties, either at or near the time of the enactment, which has been long acquiesced in, is a just medium for its judicial interpretation.'

"And see Ex parte Crump, 10 Okla. Cr. 133, 135 P. 428, 47 L.R.A., N.S., 1036; Foote v. Town of Watonga, 37 Okla. 43, 130 P. 597; Missouri, O. & G. [R. Co.] v. State, 29 Okla. 640, 119 P. 117; State v. Hooker, 26

Okla. 460, 109 P. 527; City of Tulsa et al. v. Weston et al., 102 Okla. 222, 229 P. 108; Leininger et al. v. H. L. Cannady Co., 139 Okla. 301, 282 P. 474.

At the time of the opinion of this court in Ex parte Neighbors, supra, nothing had been called to our attention pertaining to the administrative construction placed on the statutes in question. The Attorney General, in his brief, and counsel for petitioner in that case, assumed that the statutes of 1941 because of the validating provisions of the legislative act of 1943; Laws 1943, p. 252, § 1, 75 O. S. Supp. § 114, were in full force and effect.

The Neighbors opinion was written after a great deal of study of the various statutes by Judge Brett, and it was an excellent opinion based upon the theory submitted by both the state and defendant that all the various sections now appearing in Title 57 O.S. 1941, were in full force and effect. The author of that opinion did an excellent job in attempting to harmonize and apply the various provisions of those several statutes. However, since the rendition of that opinion, a large number of habeas corpus actions have been instituted by prisoners in which said actions the difficulty and almost impossibility of applying the exceptions set forth in section 105, supra, were brought to light. In view of the legislative history of the various statutes here involved, it is apparent that section 105, supra, Section 7 of the 1913 act, had been repealed and superseded by the 1915 and 1917 acts. With this conclusion established, the sole question to determine is the effect of the inclusion of such section in the 1941 Statutes and the adoption of such statutes by the Legislature in 1943.

In the case of Thomas v. State, supra, this court laid down the following rules of law as shown by the syllabus:

"3. Sec. 2, Chap. 4, Tit. 75, p. 457, Oklahoma Session Laws of 1941 [75 O.S. 1941 § 102], instructs the codifiers of the 1941 statutes to not include in their compilation 'laws held unconstitutional by the highest courts,' and to 'eliminate' all repealed laws.

"4. The Act of the Legislature in 1933, Chap. 153, sec. 3, O.S. 1941, Tit. 37, sec. 82, repealed and superseded the act of the Legislature of 1910-11, O.S. 1941, Tit. 37, §§ 31 and 32.

"5. Where one was authorized to codify existing laws but the authority was expressly withheld to include any statute which had been 'repealed' or 'held unconstitutional by the highest courts,' and such a statute was inadvertently included, adoption of statutes did not have effect of validating the statute inadvertently included."

The Supreme Court of Oklahoma, in the case of School Board of Consol. School Dist. No. 47, Stephens County, et al. v. Monsey, 198 Okla. 41, 175 P. 2d 76, 78, stated:

"By House Bill No. 519 of the Eighteenth Legislature, S.L. 1941, page 457, Section 2, 75 O.S. 1941 § 102, the West Publishing Company, as compiler of the Oklahoma Statutes 1941, was required to eliminate 'All repealed laws and those held unconstitutional by the highest courts.' But instead of eliminating the repealed portion of Section 251, the compiler included it with the footnote above quoted showing its repeal.

"By Senate Bill No. 99 of the Nineteenth Legislature, S.L. 1943, page 252, 75 O. S. Supp. §§ 114, 115, the Oklahoma Statutes 1941 so 'Compiled, codified and annotated and indexed' was 'adopted and made of force as the Code and Revised Statutes'.

"In view of the history of Section 251, was it the intention of the Legislature to put in force the proviso that had been previously repealed and which was so left in Section 251 when the statutes were compiled? We think not. The Montana Court so decided under a similar

state of facts in State ex rel. Urton v. American Bank & Trust Co., 75 Mont. 369, 243 P. 1093. See also 59 C.J. 893.

"We think the Legislature, in adopting the Code, intended that all future annexations should be governed by the 1941 annexation law, Senate Bill No. 81, 70 O.S. 1941 §§ 890.1-890.8."

It is therefore our opinion, in view of the above authorities that section 105, Tit. 57, O.S. 1941, is not in effect by virtue of its inclusion in the 1941 Statutes; that the 1917 act, section 8, which now appears as Tit. 57 O.S. 1941 § 133, is the statute governing the commitment by the trial court of prisoners to the two state penal institutions, and requires that such prisoners be sent to the nearest prison; that the State Board of Public Affairs is thereafter vested with authority to transfer such prisoners from one institution to another in performance of their duties under Tit. 57, O.S. 1941 § 132.

It follows that the case of Ex parte Neighbors, supra, is hereby overruled in so far as it is inconsistent with this opinion.

The writ of habeas corpus is therefore denied.

BAREFOOT, P. J., and BRETT, J., concur.